# IN THE SUPREME COURT OF IOWA

No. 15–0203

Filed January 13, 2017

**PAULA SEGURA** and **RICARDO SEGURA,**

Appellants,

vs.

**STATE OF IOWA,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Johnson County, Marsha A. Bergan, Judge.

Plaintiffs seek further review of a court of appeals decision affirming the district court's order dismissing their claims against the State for failing to exhaust their administrative remedies. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

Daniel D. Bernstein of Law Office of Daniel D. Bernstein, Iowa City, for appellants.

Thomas J. Miller, Attorney General, Anne Updegraff, Assistant Attorney General, and Jessica Tucker Glick and Richard M. Tucker of Phelan, Tucker, Mullen, Walker, Tucker & Gelman, L.L.P., Iowa City, for appellee.

**CADY, Chief Justice.**

In this case, we consider whether a person can properly present a claim against the State without complying with a state appeals board (board) regulation that requires the claimant to personally sign the form. The district court dismissed the claims filed by the plaintiffs in this case because their attorney signed the forms on their behalf. On further review from a decision of the court of appeals affirming the decision of the district court, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for further proceedings.

## I. Factual Background and Proceedings.

Paula Segura alleges the State of Iowa was negligent in diagnosing and treating her acute medical condition, leading to a permanent loss of function in her lower extremities. Ricardo Segura, her spouse, alleges loss of consortium. The alleged negligence occurred on May 12, 2009. The Seguras assert they learned of the injury and its cause on May 13, 2009. In April of 2010, the Seguras contacted Iowa City attorney Daniel D. Bernstein about their potential claims. Bernstein agreed to investigate the claim. The Seguras moved to Fort Worth, Texas, and Bernstein maintained "on and off communication." On May 12, 2011, Bernstein filed two board claim forms on the Seguras' behalf, signing their names and his own, and writing "per POA." Bernstein did not attach any document that would show he actually had power of attorney. The claim forms, together with attached appendices, identified the Seguras' causes of action and included a short summary of the relevant

facts.[1]  The claim forms also contained personal information, including the Seguras' and Bernstein's contact information and social security numbers.

On February 6, 2012 (approximately nine months after filing the claims), the board rejected the Seguras' claims by letter addressed to Bernstein, stating, "The State Appeal Board, after considering the facts and circumstances forming the basis of your client's claim and the applicable law, has made a final determination to deny payment of this claim." On August 3, 2012 (approximately six months after receiving the State's letter), the Seguras filed their claim in district court.

The State moved to dismiss the Seguras' petition for lack of subject matter jurisdiction, asserting the Seguras' failure to sign the claim forms and Bernstein's failure to provide evidence of power of attorney constituted noncompliance with Iowa Administrative Code rule 543—1.3(3), rendering the filings ineffectual and thus depriving the district court of subject matter jurisdiction. The Seguras resisted,

---

[1]As follows:

Paula D. Segura was hospitalized at the University of Iowa Hospitals and Clinics, Iowa City, Iowa on May 12, 2009 complaining of epigastric pain. She underwent an endoscopic retrograde cholangiopancreatogram ("ERCP") performed by William B. Silverman, M.D. During the ERCP Ms. Segura's blood pressure and blood oxygen levels dropped significantly. As a result, Ms. Segura experienced hypoperfusion, or low b[loo]d flow, resulting in lesions in her spinal c[]ord and brain. Because of this, Ms. Segura's left lower extremity is paralyzed.

And:

Ricardo Segura's wife, Paula D. Segura, was hospitalized at the University of Iowa Hospitals and Clinics, Iowa City, Iowa on May 12, 2009 complaining of epigastric pain. She underwent an endoscopic retrograde cholangiopancreatogram ("ERCP") performed by William B. Silverman, M.D. During the ERCP Ms. Segura's blood pressure and blood oxygen levels dropped significantly. As a result, Ms. Segura experienced hypoperfusion, or low b[loo]d flow, resulting in lesions in her spinal c[]ord and brain. Because of this, Ms. Segura's left lower extremity is paralyzed.

arguing Bernstein was acting as their attorney and should be entitled to file documents on their behalf, and furthermore that strict compliance with administrative rules should not be a prerequisite to jurisdiction. The district court denied the motion, finding it would be more appropriately brought as a motion for summary judgment.

The parties then engaged in a discovery dispute regarding, primarily, expert reports. The Seguras had delayed in obtaining expert witnesses, citing high cost and the potential their claim could be dismissed on jurisdictional grounds. The Seguras then moved for declaratory judgment and/or partial summary judgment on the jurisdiction issue, reiterating their arguments from the earlier resistance to the State's motion to dismiss. This time, the district court agreed with the State and concluded, "[I]t is necessary for a claims form filed under the [Iowa Tort Claims Act] to include evidence of a person's authority to represent the claimant, if the claims form is not, in fact, signed by the claimant." Finding Bernstein could not "show[] that the claims forms were completed according to the administrative rules," the district court dismissed the petition.

The Seguras appealed. They reiterated the arguments presented to the district court, but included additional legal authority and recast the issue from "whether [the Seguras'] attorney's signature on their behalf was a harmless error in the administrative process" to whether "the State Appeal Board claim forms presented by claimants Paula and Ricardo Segura provided adequate notice of their claim to the State in order for the State to commence its own investigation." The State claimed that the Seguras were attempting to argue a new, "substantive" issue that was not preserved, that the only issue on appeal should be whether the Seguras complied with the "procedural" requirements of the Iowa Tort

Claims Act (ITCA), and that the Seguras failed to do so by failing to personally sign the forms. The court of appeals agreed with the State on both error preservation and the merits and adopted the district court's ruling without further opinion. We granted further review.

## II. Standard of Review.

"A 'court has inherent power to determine whether it has jurisdiction over the subject matter of the proceedings before it.'" *Klinge v. Bentien*, 725 N.W.2d 13, 15 (Iowa 2006) (quoting *Tigges v. City of Ames*, 356 N.W.2d 503, 512 (Iowa 1984)). Our review is for correction of errors at law. *Schaefer v. Putnam*, 841 N.W.2d 68, 74 (Iowa 2013); *see also* Iowa R. App. P. 6.907.

## III. Analysis.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). "[O]ne purpose of our error preservation rules is to ensure that the opposing party and the district court are alerted to an issue at a time when corrective action can be taken or another alternative pursued." *Top of Iowa Coop. v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000); *see also Office of Consumer Advocate v. Iowa State Commerce Comm'n*, 465 N.W.2d 280, 283 (Iowa 1991). "Error preservation does not turn, however, on the thoroughness of counsel's research and briefing so long as the nature of the error has been timely brought to the attention of the district court." *Summy v. City of Des Moines*, 708 N.W.2d 333, 338 (Iowa 2006), *overruled in part on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016). Similarly, error preservation does not turn on "hypertechnical" challenges. *Ezzone v. Riccardi*, 525 N.W.2d 388, 403 (Iowa 1994).

In their motion for declaratory judgment, the Seguras characterized the issue as "whether the fact that Claimant[]s, themselves, failed to sign the State Appeal Board Claim Forms denies the District Court for the State of Iowa the jurisdiction to hear the lawsuit." In their brief in support of the motion, they posed the question, "To what extent must a claimant comply with the promulgated state tort claim form in order to properly submit a claim?" They pointed out that the board was able to investigate their claims despite their failure to sign the form. They argued to distinguish our cases holding claims must be brought by individuals authorized to bring them. In short, the argument the Seguras presented should have been more than enough to alert the court of the claimed error. *See Ezzone*, 525 N.W.2d at 403 (finding error preserved when challenge was hypertechnical); *Office of Consumer Advocate*, 465 N.W.2d at 283–84 (finding error preserved when a party alleged a violation of "procedural fairness" despite that party's failure to identify the Fourteenth Amendment's Due Process Clause as the source of the right); *see also Bartlett Grain Co., LP v. Sheeder*, 829 N.W.2d 18, 24 n.4 (Iowa 2013) (finding error preserved, even though parties did not cite to specific UCC provision because appellant alerted the court of its "essential claim"). The district court's ruling, which not only noted the Seguras had argued "that the act of retaining their counsel is, in and of itself, sufficient to permit their counsel to sign the claim forms on their behalf," but found federal precedent persuasive and stated it "consider[ed] the reasoning in *Kanar[ v. United States*, 118 F.3d 527 (7th Cir. 1997)] as [it] consider[ed] whether Plaintiffs' claims in the present case must be dismissed," shows it considered and decided the arguments to the contrary. *See State v. Lamasters*, 821 N.W.2d 856, 864 (Iowa 2012) ("If the court's ruling indicates that the court *considered* the issue

and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved."); *see also Kanar*, 118 F.3d at 530–31 (discussing what is required under the Federal Tort Claims Act to present a claim).

Error was preserved in this matter. We therefore reach the underlying issue. Doing so, we conclude the district court erred in dismissing the Seguras' claims and hold a claim is properly presented to the board when it identifies sufficient information for the board to investigate the claim and discloses the amount of damages claimed. Finding the Seguras did so, we reverse and remand for further proceedings to address the merits of their claims.

**A. Background.** The doctrine of sovereign immunity is judicial, not constitutional or statutory in origin. *See Boyer v. Iowa High Sch. Athletic Ass'n,* 256 Iowa 337, 347, 127 N.W.2d 606, 612 (1964). We have consistently held it is a jurisdictional bar. *See Montandon v. Hargrave Constr. Co.,* 256 Iowa 1297, 1299, 130 N.W.2d 659, 660 (Iowa 1964) ("[The state] is immune from suit except where immunity is waived by statute and . . . there is no statutory waiver or consent to jurisdiction in tort actions."). Leading up to the enactment of the ITCA, this court faced challenges to sovereign immunity. *See Montandon,* 256 Iowa at 1299, 130 N.W.2d at 660; *Boyer,* 256 Iowa at 347, 127 N.W.2d at 612. We declined to abrogate our doctrine and left the issue to the legislature. *See Boyer,* 127 N.W.2d at 612.

In 1965, the legislature took the opportunity and passed the ITCA. 1965 Iowa Acts ch. 79, §§ 1–23 (codified at Iowa Code §§ 25A.1–25A.20 (1966)). It became effective on March 30, 1965. *See Hubbard v. State,* 163 N.W.2d 904, 906 (Iowa 1969).

Prior to passage of the Iowa Tort Claims Act in 1965, the maxim that "the King can do no wrong" prevailed in Iowa. No tort action could be maintained against the State or its agencies. Throughout this period of time, one who suffered damages as the result of a negligent or wrongful act of a State employee had the limited choice of bringing suit against the employee personally or seeking redress from the Iowa General Assembly in the form of private relief.

Don R. Bennett, *Handling Tort Claims and Suits Against the State of Iowa: Part I,* 17 Drake L. Rev. 189, 189 (1968) (footnotes omitted) [hereinafter Bennett]. By enacting the ITCA, the State waived this immunity and opened itself to suit, but it did so strictly on its terms. *See id.* at 190.

The case of *Graham v. Worthington* was our first assessment of the ITCA, and we used the opportunity to uphold the Act's constitutionality. *See generally* 259 Iowa 845, 850–70, 146 N.W.2d 626, 630–42 (Iowa 1966). When it was challenged for being an unlawful delegation of legislative authority, we stated,

It is for the General Assembly to enact laws governing expenditure of state funds including the appropriation of moneys for payment. But once this is constitutionally done the procedures, mechanics, the fact finding process upon which payment shall be made, may with reasonably proper guides or standards be delegated to judicial or quasi-judicial bodies.

*Id.* at 857, 146 N.W.2d at 635.

Later, in *Charles Gabus Ford, Inc. v. Iowa State Highway Commission,* we found Iowa Code section 25A.5 (now section 669.5) made exhaustion "a condition precedent to the right to resort to the courts." 224 N.W.2d 639, 648 (Iowa 1974). We looked at the rationales for exhaustion, calling it "a product of the exercise of judicial restraint, resting on considerations of comity and convenience." *Id.* We noted it "is designed to promote orderly procedures within the judicial system by requiring a preliminary administrative sifting process," and that by

invoking the doctrine, courts "seek to avoid interfering with the functions of the administrative agency." *Id.*

The source of the exhaustion requirement is section 669.5(1), which provides in part,

> A suit shall not be permitted . . . unless the attorney general has made final disposition of the claim. However, if the attorney general does not make final disposition of a claim within six months after the claim is made in writing to the director of the department of management, the claimant may, by notice in writing, withdraw the claim from consideration and begin suit under this chapter.

Iowa Code § 669.5(1) (2013); *see also Feltes v. State,* 385 N.W.2d 544, 547 (Iowa 1986) (finding section 669.5 "requires that all claims be submitted to an agency and a final decision be made or six months have passed before suit is initiated"). Part of exhaustion is "presentment": The plaintiff must first present the claim to the appropriate administrative body. *See In re Estate of Voss,* 553 N.W.2d 878, 880 (Iowa 1996). The presentment requirement and related administrative processes are "intended to allow a prompt investigation of claims against the State and facilitate an early settlement when possible." *Id.* at 881.

The State argues the source of the presentment requirement is not the same as the source of the exhaustion requirement. Instead, the State asserts the source of the presentment requirement is section 669.3, which provides, "A claim made under this chapter shall be filed with the director of the department of management . . . ." Iowa Code § 669.3(2). However, reading section 669.3 in its entirety reveals it is not the source of the presentment requirement, but rather the ITCA's settlement provisions. *See* Iowa Code § 669.3(1) ("The attorney general, on behalf of the state of Iowa, shall consider, ascertain, adjust, compromise, settle, determine, and allow any claim that is subject to this chapter."); *State v.*

*DeSimone*, 839 N.W.2d 660, 666 (Iowa 2013) ("[S]tatutes must be read in their entirety."). This section is also the source of administrative authority to promulgate "rules and procedures for the handling, processing, and investigation of claims." Iowa Code § 669.3(3). These regulations prescribe, in part, the form of claims:

> **1.3(1)** *Place of filing.* Claims shall be filed in triplicate with the Department of Management, State Capitol, Des Moines, Iowa 50319.
>
> **1.3(2)** *Verification.* Claims shall be verified.
>
> **1.3(3)** *Names and signatures.* A claim shall state thereon the name, address, telephone number, and age of the person making the claim and the name, address and telephone number of the attorney, if any, preparing the claim, and their signatures.
>
> **1.3(4)** *Designation by number.* The executive secretary shall assign a number to each claim. Thereafter it may be referred to by such a number.

Iowa Admin. Code r. 543—1.3(1)–(3).

In *McGruder v. State* and *Swanger v. State*, we had the opportunity to consider the interplay between now-Iowa Code sections 669.3 and 669.5. *See Swanger v. State*, 445 N.W.2d 344, 350 (Iowa 1989); *McGruder v. State*, 420 N.W.2d 425, 426 (Iowa 1988). In *McGruder,* we were asked whether a claim must be "filed" according to now-section 669.3 for it to be "made" under now-section 669.13. *See McGruder*, 420 N.W.2d at 425. We followed federal law interpreting the Federal Tort Claims Act (FTCA) to require receipt of the claim, not mere mailing, to toll the statute. *See id.* at 426 (citing *Anderberg v. United States*, 718 F.2d 976, 977 (10th Cir. 1983)). Thus, the plaintiff in *McGruder* missed the statute of limitations when he mailed the claim form on the final day because the state did not receive the claim for two more days. *See id.* at 425–26. In *Swanger,* the plaintiffs argued that when the state's insurance adjuster took one claimant's deposition, the claimant

presented the claim to the state. *See* 445 N.W.2d at 350. We reaffirmed our holding in *McGruder* and went further to expressly tie the term "made," also in now-section 669.5, to the administrative regulations promulgated under now-section 669.3. *See id.* at 350–51 ("Following our reasoning in *McGruder,* we conclude that tort claims are 'made' for the purposes of section 25A.5 when the prescribed forms are properly filed with the director of management."). We noted the board "has prescribed the form and content of tort claims," and that "for example, [claims] must be verified and signed by the claimant." *See id.* at 350 (citing 543 Iowa Admin. Code rs. 1.3, 1.4). Thus, the plaintiffs' communications to the state's insurance adjuster were inadequate to commence the six-month period of now-section 669.5. *See id.* at 351; *see also Bloomquist v. Wapello County*, 500 N.W.2d 1, 8 (Iowa 1993) (finding claim barred when not specifically identified in claim form and stating "under Iowa law it is incumbent on the claimant to first file a claim before the proper administrative agency, even if, as a practical matter, it would not have changed the State's approach to the case").

However, we rejected a formalistic approach in a later case. In *Schneider v. State*, the state argued "plaintiffs who failed to supply information required by the state appeal board's administrative rules had failed to exhaust administrative remedies." 789 N.W.2d 138, 144 (Iowa 2010). The plaintiffs had filed board claim forms, "disclos[ing] the amount of each claim for property damage and generally describ[ing] the legal theories asserted against the State," but they failed to respond to requests for additional information. *See id.* at 144–45. Nevertheless, we noted the board's failure to invoke its administrative means of inducing the plaintiffs to provide the information was evidence "the board had available to it the information it believed it needed to make its

administrative determination." *See id.* at 145–46. Because the board ultimately denied the claim, we found "the administrative process ran its course." *See id.* at 146. Looking to the underlying principles of the exhaustion doctrine, we found it inappropriate to invoke it, as doing so would not "avoid interference with the administrative process." *See id.*

In *Voss*, we questioned whether the rule "that a plaintiff must have the capacity to sue in order to commence and maintain an action in district court . . . appl[ied] to claims filed with the State Appeal Board." 553 N.W.2d at 880. The plaintiff had filed a claim for her son's wrongful death in her individual capacity, failing to obtain appointment as administrator of her son's estate until well after the board denied her claim. *See id.* at 879. Because the "settlement of claims is greatly facilitated if the person making the claim is the person entitled to any recovery and has the authority to settle," and the plaintiff lacked that capacity, her claim was barred. *Id.* at 881. We reiterated a point we had applied elsewhere, that the plaintiff's capacity to sue must exist at the time of filing, and "future appointment . . . cannot prevent the expiration of the limitations period." *Id.* at 882 (quoting *Estate of Dyer v. Krug*, 533 N.W.2d 221, 224 (Iowa 1995)). We noted "[a] less theoretical reason" for this rule: "Requiring the Board to delay consideration of a claim while waiting for the claimant to obtain the legal authority to pursue it would defeat the statutory goal of prompt settlement." *Id.*

We recently revisited the issue in *McFadden v. Department of Transportation*, 877 N.W.2d 119, 120 (Iowa 2016). There, like in *Voss*, the claimant did not attach evidence of her appointment as administrator of her husband's estate to her board claim form when bringing a claim for his wrongful death. *See id.* However, the claimant in *McFadden*, unlike the claimant in *Voss*, was in fact the administrator at the time she

presented the claim. *See id.* Thus, she was entitled to bring the claim; she simply failed to attach the proof. *See id.* at 122. The state argued board rules, specifically 1.3(3), required the claimant to disclose her representative capacity. *See id.* at 123 (citing Iowa Admin. Code r. 543—1.3(3)). We balanced two competing principles: "Our legal processes normally strive to resolve disputes on their merits," and "[r]ules, especially those which fix jurisdictional matters, are . . . vital to the proper conduct of court business." *Id.* at 121 (first quoting *MC Holdings, L.L.C. v. Davis Cty. Bd. of Review*, 830 N.W.2d 325, 328 (Iowa 2013); then quoting *Gordon v. Doden*, 261 Iowa 285, 288–89, 154 N.W.2d 146, 148 (1967) (alteration in original)). We found the former consideration prevailed, quoting, "[R]ights must not be denied by too strict an application of mere legal formality." *Id.* at 123 (quoting *McMillan v. Osterson*, 191 Iowa 983, 985, 183 N.W. 487, 488 (1921)). Thus, we concluded, "The appeal board's rules and claim form did not require [the claimant] to allege her representative capacity in presenting the tort claim in this case." *Id.*

These two competing principles present themselves again. There is no question the Seguras failed to comply with the administrative rules prescribing the form of claims; they did not personally sign their claim forms.[2] However, the State does not assert this failure hindered its

---

[2]We acknowledge Iowa Code section 602.10114 gives an attorney the power to sign litigation documents in the name of a client. However, this general power would not necessarily trump a specific requirement for a party to sign a document. *See, e.g.*, Iowa Code § 86.13(3) (authorizing settlement of workers' compensation claim "only if [the agreement is] signed by all parties and approved by the workers' compensation commissioner"); *id.* § 507C.36(1)(*g*) (requiring in certain insurance matter proof of claim be "signed by the claimant" and include "[t]he name and address of the claimant and the attorney who represents the claimant, if any"); *id.* § 809.3(3) (requiring an application for the return of seized property "be signed by the claimant under penalty of perjury"). Because we resolve this case on other grounds, we need not reach this issue. *See, e.g., Jones v. Univ. of Iowa*, 836 N.W.2d 127, 142 (Iowa 2013) (declining to reach

ability to investigate the claim, stating "[h]ow the Board dealt with [the Seguras'] improperly filed tort claims before denying the claims is irrelevant." Indeed, the board appeared to have the necessary information to handle the claim as it ultimately denied it "after considering the facts and circumstances forming the basis of [the] claim and the applicable law." *Schneider*, 789 N.W.2d at 146 n.8 (finding the board's use of this language showed "the board's explanation for the denial of the claims appears to have rested on liability considerations rather than the plaintiffs' failure to sufficiently document their claims"). We are thus called upon to answer a question previously unaddressed: Did the legislature vest the board with the authority to deprive the courts of jurisdiction?

**B. Application to the Seguras' Claims.** We begin by reaffirming a concept we have consistently applied: Exhaustion is a jurisdictional prerequisite under our interpretation of the ITCA. *See McFadden*, 877 N.W.2d at 122 ("Exhaustion of the administrative process is jurisdictional, and a suit commenced without complying with this process is subject to dismissal." (quoting *Swanger*, 445 N.W.2d at 347)); *Feltes*, 385 N.W.2d at 547 ("[W]hen an area or subcategory is excepted from the waiver, it is still covered by sovereign immunity, and consequently, the courts have no jurisdiction."); *Charles Gabus Ford*, 224 N.W.2d at 648 ("[T]he State Appeal Board has 'primary' or 'exclusive' jurisdiction of tort claims against the State."); *see also* Bennett, 17 Drake L. Rev. at 192 ("It seems obvious that the exhaustion of the administrative process is jurisdictional, and a suit commenced without

_____

statutory construction and constitutional arguments when deciding case on other grounds).

complying therewith is subject to dismissal."). Under Iowa law it is well established the district court does not have jurisdiction to hear a tort claim against the state until it has been presented, properly, to the board. *See Voss*, 553 N.W.2d at 880; *Charles Gabus Ford*, 224 N.W.2d at 648. We also recognize that jurisdictional matters must be carefully construed. *See McFadden*, 877 N.W.2d at 121. If the Seguras failed to exhaust their administrative remedies by improperly presenting their claim, the district court was correct to determine it lacked jurisdiction. *Voss*, 553 N.W.2d at 880 ("Improper presentment of a claim, or not presenting one at all, has been considered a failure to exhaust one's administrative remedies, depriving the district court of subject matter jurisdiction.").

Our polestar is legislative intent. *See id.* "In construing a statute, we look to the object to be accomplished and give the statute a meaning that will effectuate, rather than defeat, that object." *Id.* We have previously held the legislative intent in creating the administrative process under chapter 669 was "to allow a prompt investigation of claims against the State and facilitate an early settlement when possible." *Id.* at 881. The exhaustion requirement furthers this purpose. *See Schneider*, 789 N.W.2d at 145 ("We have noted that the doctrine requiring a plaintiff to exhaust administrative remedies 'is designed to promote orderly procedures within the judicial system by requiring a preliminary administrative sifting process.'" (quoting *Charles Gabus Ford*, 224 N.W.2d at 648)). And, obviously, the legislature delegated some authority to allow the functioning of this investigation and settlement process. *See* Iowa Code § 669.3(3). However, while exhaustion of administrative remedies is a jurisdictional prerequisite, and our legislature clearly intended this process be governed by administrative

rule, we have not held the legislature intended to delegate the authority to set the jurisdiction of our courts.

As noted above, the source of the presentment requirement is Iowa Code section 669.5. *See Feltes*, 385 N.W.2d at 547. Section 669.5 does not delegate administrative authority. *See generally* Iowa Code § 669.5(1)–(2). Rather, the board's authority comes from section 669.3. *See id.* § 669.3(3). Section 669.3 governs claims processing and gives the board the authority to "adopt rules and procedures for the handling, processing, and investigation of claims." *Id.* This delegation does not say "for the presentment of claims," but "for the handling, processing, and investigation of claims." This indicates the legislature only intended to delegate the authority to promulgate rules necessary to investigate and settle claims, not to govern their initial presentment for exhaustion under section 669.5. *See Thomas v. Gavin*, 838 N.W.2d 518, 524 (Iowa 2013) (noting the statutory construction rule of *expressio unius est exclusio alterius*). Any statements to the contrary in our precedent are distinguishable on this point. *McGruder* merely stands for the proposition that sections of the ITCA may work in harmony—that a claim is not properly presented until the board receives it. *See* 420 N.W.2d at 426. This is not controlled by administrative rule but by statute. *See id.* Nor does our statement in *Swanger*, "tort claims are 'made' . . . when the prescribed forms are properly filed," control. 445 N.W.2d at 351. Section 669.5 requires the claim be made in writing. *See* Iowa Code § 669.5. In *Swanger*, the claimant asserted it was made by mere statements in a deposition. *See* 445 N.W.2d at 351.

We can also look to the principles of exhaustion to support this conclusion. *See Charles Gabus Ford*, 224 N.W.2d at 648. Exhaustion under section 669.5 requires a claim be made in writing so that the

attorney general has the opportunity to make a final disposition of the claim. *See* Iowa Code § 669.5(1). The administrative process cannot "r[u]n its course" absent key information. *Schneider*, 789 N.W.2d at 146. A signature, made in the presence of a notary and filed in triplicate, is not key information to the disposition of a claim. *Cf.* Iowa Admin. Code r. 543—1.3(1)–(3). These requirements, just like the additional requirements of the claimant's address, telephone number, and age, are more appropriately characterized as claims-processing rules. *See id.* Thus, they are appropriately promulgated pursuant to the delegation to adopt rules governing handling and processing, but they are not rules governing presentment. The failure to comply with these administrative rules alone should not deprive a district court of jurisdiction.

The State argues this court's opinion in *Voss* controls. The claim in *Voss* was not barred because the claimant failed to comply with an administrative rule; the claim was barred because the claimant did not have the capacity to bring it. *See* 553 N.W.2d at 880, 882 ("It is 'an elementary rule of law' that a plaintiff must have the capacity to sue in order to commence and maintain an action in district court." (quoting *Dumbaugh v. Cascade Mfg. Co.*, 264 N.W.2d 763, 765 (Iowa 1978))). When a claimant has the capacity, even if they do not attach proof with their initial claim, the claim is not barred. *See McFadden*, 877 N.W.2d 122. There is no allegation Paula Segura lacks the capacity to bring her medical malpractice claim, nor is there an allegation Ricardo Segura lacks the capacity to bring his loss-of-consortium claim. The holding of *Voss* simply does not apply to an attorney's ability to bring a claim on behalf of his or her clients, the true claimants. Iowa Code section 602.10114(1) authorizes an attorney to "[e]xecute in the name of a client a bond, *or other written instrument,* necessary and proper for the

prosecution of an action or proceeding about to be or already commenced." *See* Iowa Code § 602.10114(1) (emphasis added). So, too, do our rules of civil procedure. *See* Iowa R. Civ. P. 1.411(1) ("Each appearance, notice, motion, or pleading . . . shall bear the signature . . . of the party *or* attorney filing it." (Emphasis added.)). If there was any doubt, the Seguras dispelled it by filing affidavits stating Bernstein had the authority to bring their claims. Thus, *Voss* is inapplicable.

We find the administrative regulations promulgated under section 669.3 do not define the jurisdictional ambit of the presentment requirement under section 669.5. Instead, a claim is properly presented when it, in writing, identifies sufficient information for the board to investigate the claim and discloses the amount of damages claimed. We reach this finding by applying our rules of statutory construction, relying on the underlying principles of the exhaustion requirement, and building on our existing precedent. We note, however, that this view is consistent with the vast majority of federal courts interpreting the FTCA; these courts similarly distinguish between presentment under 28 U.S.C. § 2675(a) and claims processing under 28 U.S.C. § 2672.[3] *See GAF Corp. v. United States*, 818 F.2d 901, 918–19 (D.C. Cir. 1987) ("Thus we hold, with the Ninth Circuit and the majority of appellate courts to have considered the question, that Section 2675(a) requires a claimant to file (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages

---

[3]Even the one jurisdiction that expressly subscribes to the view that administrative regulations define the authority of the district court to hear the claim would likely allow this one to proceed. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 787 (7th Cir. 2014) ("So long as the proper agency had the opportunity to settle the claim for money damages before the point of suit, . . . technical deficiencies in the administrative claim could well be a case of '[n]o harm, no foul.'" (quoting *Kanar*, 118 F.3d at 531)).

claim."); *see also Lopez v. United States*, 823 F.3d 970, 976 (10th Cir. 2016) (same); *Pleasant v. United States*, 764 F.3d 445, 448 (5th Cir. 2014) (same); *Blair v. IRS*, 304 F.3d 861, 865 (9th Cir. 2002) (same); *Santiago-Ramirez v. Sec'y of Dep't of Def.*, 984 F.2d 16, 19 (1st Cir. 1993) (same); *Conn v. United States*, 867 F.2d 916, 918–19 (6th Cir. 1989) (same); *Tidd v. United States*, 786 F.2d 1565, 1567 (11th Cir. 1986) (same); *Tucker v. U.S. Postal Serv.*, 676 F.2d 954, 959 (3d Cir. 1982) (same). Section 2672 authorizes the Attorney General to adopt rules that allow the relevant federal agency to "consider, ascertain, adjust, determine, compromise, and settle any claim." 28 U.S.C. § 2672 (2012). But the jurisdictional requirement of presentment and exhaustion appears to be from § 2675, which does not contain a similar delegation of authority. *See* 28 U.S.C. § 2675. Accordingly, federal courts hold "this means [a court] must distinguish between the presentment filing mandated by Section 2675(a) and the settlement procedures of Section 2672." *GAF Corp.*, 818 F.2d at 918–19 ("Presentment is mandatory; settlement is merely optional." This distinction is crucial for courts called upon to determine their jurisdiction to hear claims under the [FTCA]."). We look to these federal decisions not to conform our interpretation of the ITCA to their interpretation of the FTCA, but merely for persuasive guidance on ambiguous provisions of similar law, as we have often done. *See, e.g., Feltes*, 385 N.W.2d at 547 n.5 (comparing now-section 669.5 with 28 U.S.C. § 2675(a)); *see also Voss*, 553 N.W.2d at 881 n.2 (noting we may "look to the Federal Tort Claims Act and federal cases for guidance in interpreting the Iowa Tort Claims Act").

We hold today that the information we described in *Schneider* is sufficient to present a claim under the ITCA. *See* 789 N.W.2d at 144. A claimant presents a claim when the board receives a writing that

"disclose[s] the amount of" damages claimed and "generally describe[s] the legal theories asserted against the State." *Id.*; *see also* Iowa Code § 669.5. This should give the board sufficient information to investigate the claim, which is all that is required for the administrative process to run its course. *See Schneider*, 789 N.W.2d at 145–46. To facilitate this process, the board is vested with the authority to demand additional information under Iowa Code section 669.3(3). Indeed, it has promulgated rules empowering the special attorney general investigating the claim to administer oaths, take testimony in affidavits, depositions, or interrogatories, and even subpoena witnesses. *See* Iowa Admin. Code r. 543—1.7. If the board finds the claim form lacks a signature, verification, or any other piece of information it requires under its regulations, it can demand it. However, the administrative rules prescribing the form and content of claims do not operate as a jurisdictional bar to suit if the claim is properly presented and six months pass or the attorney general makes a final disposition. *See* Iowa Code § 669.5(1).

Applied to the Seguras' claims, they identified the underlying facts of their causes of action[4] and asserted a claim for damages. They even identified witnesses. There is no allegation the board lacked sufficient information to investigate the claim, and in fact, it appears to have done so. Thus, the Seguras presented their claim, the administrative process ran its course, and they may now proceed before the district court.

---

[4]Ricardo Segura's form expressly stated it was for loss of consortium. Paula Segura's form did not state "medical malpractice," but a reasonable reading of the facts it did state would reveal that is the claim presented.

**IV. Conclusion.**

We conclude the district court had jurisdiction to hear the Seguras' claims. This result is consistent with the ITCA's text and its purpose of "doing substantial justice." *See id.* § 669.9 ("With a view to doing substantial justice, the attorney general is authorized to compromise or settle any suit permitted under this chapter . . . ."); *Graham*, 259 Iowa at 853, 146 N.W.2d at 632 ("The self-evident purpose of the [ITCA] is to provide an orderly method by which to compensate those tortiously damaged by any officer, agent or employee of the state . . . ."). It is consistent with our precedent. *See McFadden*, 877 N.W.2d at 123 ("[R]ights must not be denied by too strict an application of mere legal formality." (quoting *McMillan*, 191 Iowa at 985, 183 N.W. at 488)). It is consistent with the apparent legislative intent, and it is even consistent with the analogous approach of most federal courts. *See Mader v. United States*, 654 F.3d 794, 810 (8th Cir. 2011) (Bye, J., dissenting) (noting "the judicial consensus is that section 2675 mandates only 'minimal notice' "); *Feltes*, 385 N.W.2d at 547 (identifying now-section 669.5 as the source of the exhaustion requirement). An alternative holding would deny the Seguras the right to be heard solely because of a state appeal board rule the board never attempted to enforce. The Seguras' completed claim forms sufficiently presented their claims to the board by enabling it to investigate them, which it apparently did. *See Schneider*, 789 N.W.2d at 146 n.8. If the board requires a signature while investigating a future claim, it can request it during the six months in which it has exclusive jurisdiction. *See* Iowa Code § 669.3(3); Iowa Admin. R. 543—1.7; *Charles Gabus Ford*, 224 N.W.2d at 648. This approach accommodates the board's right to obtain relevant information and verification without barring potentially meritorious claims based on

initial noncompliance. Accordingly, we remand this case for further proceedings on its merits.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED.**

All justices concur except Wiggins, J., who concurs specially, and Mansfield and Waterman, JJ., who dissent.

**WIGGINS, Justice (concurring specially).**

I agree with the majority that an administrative agency's rule cannot divest our courts of jurisdiction over a tort claim. However, the court does not have to reach that issue because I would find the Seguras complied with the requirements of the Iowa Tort Claims Act (ITCA) by applying Iowa Code section 602.10114 (2013) and find that the district court had jurisdiction of this matter.

The State takes the position that because its rules require the signature of the client, a tort claim form filed without the client's signature or a power of attorney giving the attorney the power to sign the claim form divests the courts of jurisdiction. Our statutes do not support this claim.

The Code provides how a person makes a claim under the ITCA. Specifically,

> a claim or suit otherwise permitted under this chapter shall be forever barred, unless within two years after the claim accrued, the claim is made in writing and filed with the director of the department of management under this chapter.

Iowa Code § 669.13(1). Thus, the Code only requires the person filing the claim to file it in writing with the department of management within a specified time. Chapter 669 of the Code does not contain any provision as to who has to sign the claim.

Another section of the Code allows an attorney to file a claim in a proceeding, without the necessity of the client's signatures. The Code gives an attorney the power to

> [e]xecute in the name of a client a bond, or other written instrument, necessary and proper for the prosecution of an action or *proceeding* about to be or already commenced, or

for the prosecution or defense of any right growing out of an action, proceeding, or final judgment rendered therein.

*Id.* § 602.10114. Therefore, when the Code requires a party to file a written document in a proceeding, an attorney has the authority of his or her client to sign the document.

The State enacted an administrative rule stating,

All claims should be typewritten, but claims printed by hand will be accepted if legible.

**1.3(1)** *Place of filing.* Claims shall be filed in triplicate with the Department of Management, State Capitol, Des Moines, Iowa 50319.

**1.3(2)** *Verification.* Claims shall be verified.

**1.3(3)** *Names and signatures.* A claim shall state thereon the name, address, telephone number, and age of the person making the claim and the name, address and telephone number of the attorney, if any, preparing the claim, and their signatures.

**1.3(4)** *Designation by number.* The executive secretary shall assign a number to each claim. Thereafter it may be referred to by such a number.

Iowa Admin. Code r. 543—1.3.

The signature boxes of the claim forms filed by Paula Segura and Ricardo Segura were signed as follows:

I, the claimant, being duly sworn upon oath depose and state that I have read the supplied information and the same is true and correct to the best of my belief.

S/Paula Segura by attorney Bernstein per POA.

I, the claimant, being duly sworn upon oath depose and state that I have read the supplied information and the same is true and correct to the best of my belief.

S/Ricardo Segura by attorney Bernstein per POA.

In its brief, the State claims the tort claim forms were defective because "[a] power of attorney document did not accompany either claim." The State's argument in this regard was

Attorney Bernstein was not permitted to sign the Seguras'
names on their tort claims without valid powers of attorney.
He was certainly not permitted to sign the Seguras' names
under oath without valid powers of attorney. Attorney
Bernstein failed to procure such powers of attorney. Paula
Segura and Ricardo Segura were thus required to sign and
verify their respective tort claims, and they did not. As a
result, the Seguras failed to comply with the procedural
requirements of the ITCA, and their tort claims were not
properly filed.

This argument makes it clear that the State acknowledges a signature on a tort claim form signed by someone other than the claimant is allowed under the Act as long as he or she has the power to do so. Section 602.10114 gave attorney Bernstien the authority to sign the claim forms on behalf of the Seguras when Bernstein submitted the forms to the department of management. I can find no authority that an administrative rule can require additional action by a party to confer jurisdiction on the court when that action is not required by the statute.[5]

I would thus conclude attorney Bernstein's signatures on behalf of the Seguras on the tort claim forms complied with the Code and the rule. First, a notary verified the claim forms. Second, they contained the names of the claimants, and the Seguras' attorney signed the forms on the claimants' behalf by a power of attorney. Third, section 602.10114 gives the attorney the power of attorney to sign the documents on the Seguras' behalf.

Accordingly, I would find jurisdiction.

---

[5]I also do not believe an agency can create a rule requiring a signature of a party to a document when the statute conferring jurisdiction on the court does not have the same requirement. *See Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004) (holding an agency cannot change the meaning of a statute by writing a rule). However, neither the majority nor I need reach this issue because the State concedes that a power of attorney is sufficient to make the claim form valid.

**MANSFIELD, Justice (dissenting).**

I respectfully dissent. Under the court's decision, the State will no longer be able to insist upon *signed* claims, let alone *verified* ones. In my view, the court has disregarded clear language in chapter 669 and the Iowa Administrative Code, while uprooting established caselaw. All this is being done to bring to life a claim that the attorney likely knew was noncompliant when he submitted it.

This case involves alleged medical malpractice that occurred at the University of Iowa Hospitals on May 12, 2009. As early as April 2010, the Seguras were in contact with their present attorney. However, no claim was filed with the State until over a year later.

Iowa Code section 669.3 provides:

> 1. The attorney general, on behalf of the state of Iowa, shall consider, ascertain, adjust, compromise, settle, determine, and allow any claim that is subject to this chapter.
>
> 2. A claim made under this chapter shall be filed with the director of the department of management, who shall acknowledge receipt on behalf of the state.
>
> 3. The state appeal board shall adopt rules and procedures for the handling, processing, and investigation of claims, in accordance with chapter 17A.

Iowa Code § 669.3 (2013).

The applicable rules adopted by the state appeal board (board) under the authority of subsection 3 provide:

> All claims should be typewritten, but claims printed by hand will be accepted if legible.
>
> **1.3(1)** *Place of filing.* Claims shall be filed in triplicate with the Department of Management, State Capitol, Des Moines, Iowa 50319.
>
> **1.3(2)** *Verification.* Claims shall be verified.
>
> **1.3(3)** *Names and signatures.* A claim shall state thereon the name, address, telephone number, and age of

the person making the claim and the name, address and telephone number of the attorney, if any, preparing the claim, and their signatures.

**1.3(4)** *Designation by number.* The executive secretary shall assign a number to each claim. Thereafter it may be referred to by such a number.

Iowa Admin. Code r. 543—1.3. Notably, these rules require that "[c]laims shall be verified." *Id.*

The board's one-page claim form is not complicated or difficult to follow. There are sections for information about the claimant and for information on the claim itself. At the bottom of the page, consistent with the board's rules, there is a space for "CLAIMANT'S SIGNATURE." Right above the signature space the form states, "I, the claimant, being duly sworn upon oath depose and state that I have read the supplied information and the same is true and correct to the best of my belief." In addition, at the top of the one-page form, the directions state, "CLAIMANT and NOTARY public must sign."

Neither of the Seguras signed the form. Instead, their attorney signed the forms in the space for "CLAIMANT'S SIGNATURE." He added the handwritten notation: "by attorney . . . per POA." "POA" of course is short for "power of attorney."

In reality, the Seguras' attorney had no powers of attorney. *See* Iowa Code § 633B.102(9) (" '*Power of attorney*' means a writing that grants authority to an agent to act in the place of the principal, whether or not the term 'power of attorney' is used."). Arguably, the attorney could have been admonished for this misstatement. Regardless, the claim was clearly not verified by the claimant as required by rule 543—1.3. Indeed, the majority concedes this point.[6]

---

[6]Given the court's opinion, from now on, *nobody* will need to sign the claim forms.

The verification requirement is not some trifling technicality. When the State waives sovereign immunity to allow claims against it, the State is entitled to insist that the claim be backed by the claimant's oath as an assurance of its reliability. *See id.* § 669.4 ("The immunity of the state from suit and liability is waived *to the extent provided in this chapter.*" (Emphasis added.)); *accord Rivera v. Woodward Res. Ctr.*, 830 N.W.2d 724, 727 (Iowa 2013) (recognizing that "compliance with an administrative scheme" is "[o]ne of the most prominent conditions interposed by the ITCA"). After all, the Internal Revenue Code requires that tax returns be verified, *see* 26 U.S.C. § 6065 (2012), insurance companies typically require that insurance claims be verified, and we require verifications under our own rules in a variety of situations, *see, e.g.*, Iowa R. Civ. P. 1.405(4) (denial of signature); *id.* r. 1.509(1)(*c*) (interrogatory answers); *id.* r. 1.1502(1) (application for temporary injunction); *id.* r. 1.1901-Form 16 (expedited civil action certification). Here, because the Seguras' claims were not verified, the Seguras were not bound under penalty of perjury to anything the claim forms said.[7]

To sum up: The statute specifically empowers the board to adopt rules for what a claim must contain. *See* Iowa Code § 669.3(3). The board did so. *See* Iowa Admin. Code r. 543—1.3. The Seguras' claims failed to comply with those rules in a material way. As the majority puts it, "There is no question the Seguras failed to comply with the administrative rules prescribing the form of claims . . . ."

---

[7]We also require appellants in child-in-need-of-assistance and termination-of-parental-rights cases to personally sign the notice of appeal, even though a verification is not required. *See, e.g.*, Iowa R. App. P. 6.102(1)(*a*) ("The notice of appeal cannot be filed unless signed by both the appellant's counsel and the appellant.")

The majority excuses this noncompliance by determining the board lacked authority to issue its longstanding administrative rules. The majority says that Iowa Code section 669.3(3) only authorizes the board to promulgate rules "for the handling, processing, and investigation of claims," and not "for the presentment of claims"—as if the two are distinguishable.

I don't follow this argument. In my view, language authorizing the board to issue rules for the "handling" and "processing" of claims empowers the board to adopt a rule stating a claim must be signed under oath by the claimant. We previously said so in *Swanger v. State*:

> Section 25A.3 [now section 669.3] further empowers the appeal board to adopt rules and procedures for handling and processing claims. Pursuant to its rule-making authority, the state appeal board has prescribed the form and content of tort claims. Tort claims before the appeal board, for example, must be verified and signed by the claimant, filed with the department of management at Des Moines, and must describe the accident, injuries and claims in detail.

445 N.W.2d 344, 350 (Iowa 1989) (citation omitted). In other words, in *Swanger*, we cited the verification requirement as one example of a requirement the board has prescribed "[p]ursuant to its rule-making authority [in section 669.3]." *Id.* Today's decision now tosses aside this language from *Swanger*.

Of course, we are entitled to change our minds. But why would we do so here? It would be impossible to have an orderly system for the "processing" and "handling" of claims without some minimum criteria for what a claim must *contain*. Indeed, the court adopts minimum standards of its own—they just happen to be different from the board's requirements as set forth in its regulations.

The court does not dispute that the proper presentment of a claim is a jurisdictional prerequisite to bringing a lawsuit under the Iowa Tort

Claims Act (ITCA). *See In re Estate of Voss*, 553 N.W.2d 878, 880 (Iowa 1996) ("Improper presentment of a claim, or not presenting one at all, has been considered a failure to exhaust one's administrative remedies, depriving the district court of subject matter jurisdiction."). The disagreement is essentially over who gets to decide the contents of a claim. Is it (1) the justices of this court, or (2) the board through its duly promulgated regulations? I think the legislature delegated the matter to the board in Iowa Code section 669.3(3)—not to us.

Today's decision is also at odds with *Voss*. *Voss* arose out of a fatal automobile accident where the State was allegedly at fault. *See id.* at 879. The deceased's mother signed the claim as the claimant but had not yet been appointed administrator of her son's estate. *Id.* We held that such a claim was insufficient:

> Obviously, settlement of claims is greatly facilitated if the person making the claim is the person entitled to any recovery and has the authority to settle.
>
> . . . [A] claim is defective if it is not made by a claimant to whom the State would be liable for the damages sought.

*Id.* at 881. This case presents the same circumstances, practically speaking. The person who actually *made* the claim was the Seguras' attorney, who would not have been entitled to the recovery or authorized to settle the claim.

*Voss* emphasizes that the claim-filing requirements are supposed to eliminate "[t]he filing of multiple claims" and to save the State from having to wait for a claimant "to obtain the legal authority to pursue" a claim that has been filed. *Id.* at 881–82. Today these justifications vanish, and this aspect of *Voss* is effectively overruled. In its stead, the majority holds that a valid claim need only "identif[y] sufficient

information for the board to investigate the claim and disclose[] the amount of damages claimed." By this minimal standard, practically any piece of paper will do. The court thus shifts time, burden, and expense from the claimant to the State. And it does so despite the clear language of Iowa Code section 669.3(3) and the board's administrative rules, not to mention the principle of a limited waiver of sovereign immunity.

The court relies on Federal Tort Claims Act (FTCA) precedent, but this reliance is flawed at its inception because of differences in the two statutes. We generally say that we are "guided by interpretations of the FTCA, which was the model for the ITCA, *when the wording of the two Acts is identical or similar.*" *Thomas v. Gavin*, 838 N.W.2d 518, 525 (Iowa 2013) (emphasis added); *see Smith v. Iowa State Univ. of Sci. & Tech.*, 851 N.W.2d 1, 21 (Iowa 2014); *Minor v. State*, 819 N.W.2d 383, 406 & n.10 (Iowa 2012); *see also Godfrey v. State*, 847 N.W.2d 578, 584 (Iowa 2014) (comparing section 669.5(2)(*a*) to similarly worded federal law). Here the wording of the two Acts is not identical or similar.

Unlike Iowa law, the FTCA requires only that "the claimant shall have first *presented* the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a) (emphasis added). By contrast, Iowa Code section 669.3 requires the attorney general to "consider, ascertain, adjust, compromise, settle, determine, and allow any claim" and also requires the board to "adopt rules and procedures for the handling, processing, and investigation of claims." Iowa Code § 669.3(1), (3). In both instances, section 669.3 uses the mandatory term "shall" with respect to these requirements. *Id.*

Federal courts interpreting the FTCA have accordingly held that Department of Justice regulations "which flesh out the requirements for the presentation of administrative claims for settlement" are not

jurisdictionally binding because 28 U.S.C. § 2675 only mandates pre-suit notice. *See Santiago-Ramirez v. Sec'y of Dep't of Def.*, 984 F.2d 16, 19–20 (1st Cir. 1993) ("[T]his circuit has followed the general shift among all circuits toward a recognition of the distinction between presenting a claim in a section 2675 context and presenting a claim for settlement."); *Tucker v. U.S. Postal Serv.*, 676 F.2d 954, 957 (3d Cir. 1982) ("The question whether a plaintiff has presented the requisite section 2675 notice is determined without reference to whether that plaintiff has complied with all settlement related requests for information."). That is because the FTCA does not require or even authorize the government to adopt rules for the "handling" and "processing" of claims.

Our statutory scheme, on the other hand, mandates more than giving the State perfunctory notice. It is designed to facilitate prompt settlement, as we held in *Voss*. *See* 553 N.W.2d at 880–81 ("A requirement the claimant possess the capacity to sue is . . . intended to allow a prompt investigation of claims against the State and facilitate an early settlement when possible."). Whether or not the Seguras' claims would have passed FTCA muster is therefore irrelevant. *See, e.g., Griffen v. State*, 767 N.W.2d 633, 635–36 (Iowa 2009) (rejecting an interpretation of the FTCA as "not applicable to the ITCA" when language in the Acts differ).

The majority also suggests today's decision is supported by *Schneider v. State*, 789 N.W.2d 138 (Iowa 2010). I respectfully disagree. In that case, "[e]ach of the plaintiffs . . . filed an administrative claim on a form promulgated by the appeal board." *Id.* at 145. There was no issue raised as to whether the claims met the formal requirements of Iowa Administrative Code rule 543—1.3. *See id.* Rather, the question we had to decide was "whether those plaintiffs who thereafter declined the

board's request for additional documentation failed to exhaust the available administrative remedy and thereby deprived the district court of subject matter jurisdiction." *Id.* We noted,

> Although some of the plaintiffs failed to submit any documentation to augment their administrative claim forms, and others submitted documentation the State's claims manager deemed conclusory, each of the challenged claims disclosed the type of claim (tort) asserted, stated the amount of property damage claimed, and provided a general statement of the relevant legal theory supporting it.

*Id.* And we said that was enough. *Id.* at 146.

*Schneider* thus involved the different question of how much detail must be provided on behalf of a claim that is presumably verified and already complied with the board's other requirements as to form. *See id.* ("Under these circumstances, we conclude the board had available to it the information it believed it needed to make its administrative determination.").

The majority also states that the board "never attempted to enforce" the verification requirement. This assertion is unfair to the board. At the administrative level, the board denied the claims without giving a reason. The board *didn't know for a fact* no powers of attorney existed until the case reached the district court. That is when the State served a document request, asking for the powers of attorney. The Seguras' attorney refused to respond to the request, raising a frivolous objection that the request violated the attorney–client privilege. Finally, after a motion to compel had been filed, counsel *admitted* there were no powers of attorney in a district court hearing. If anyone was giving somebody the runaround, it was the Seguras' attorney and not the State.

While it might be desirable in the abstract to "accommodate[]" the interests of the Seguras and the State, as the majority puts it, that is not

our role. "The State may . . . be sued in tort, but only in the manner and to the extent to which consent has been given by the legislature." *Swanger*, 445 N.W.2d at 346.

Lastly, let me add some observations regarding the special concurrence. The special concurrence first argues that Iowa Code section 669.13 only requires "the person filing the claim to file it in writing with the department of management within a specified time." That is not an accurate paraphrasing of the statute. Section 669.13 bars the claim unless it was timely filed in writing with the department of management "*under this chapter.*" Iowa Code § 669.13(1) (emphasis added). "Under this chapter" means the filer has to comply with the filing requirements of this chapter, which are set forth in section 669.3 and the corresponding administrative rules. The special concurrence reads the phrase "under this chapter" out of the statute.

Alternatively, the special concurrence argues that another law, Iowa Code section 602.10114, overrides section 669.3 and the board's administrative rule requiring signature and verification by the claimant. Section 602.10114 dates back to our early statehood days and provides,

> An attorney and counselor has power to:
>
> 1. Execute in the name of a client a bond, or other written instrument, necessary and proper for the prosecution of an action or proceeding about to be or already commenced, or for the prosecution or defense of any right growing out of an action, proceeding, or final judgment rendered therein.

Iowa Code § 602.10114(1).

According to the special concurrence, section 602.10114 empowers an attorney at all times to sign any litigation-related paper on the client's behalf. If this were true, it would invalidate any other instance where a statute or rule requires client verification or client signature.

It isn't true. This statute has been interpreted as giving the attorney authority to execute papers on the client's behalf *unless another law provides otherwise*. *See Cassady v. Mott,* 203 Iowa 17, 19, 212 N.W. 332, 333 (1927) (quoting this statute and finding that an attorney could sign notices of forfeiture after noting that the forfeiture law "does not in terms require that the notice of forfeiture must be signed in person by the parties"); *In re Oldfield's Estate,* 158 Iowa 98, 103–04, 138 N.W. 846, 848–49 (1912) (indicating that this statute allows the attorney to sign the notice of appeal for the appellant "where there is no statutory requirement otherwise"); *see also* Iowa Code § 4.7 (resolving a conflict between a general provision and an irreconcilable special provision in favor of the special provision). Here Iowa Code section 669.3 and rule 543—1.3 provide otherwise.

For the foregoing reasons, I would affirm the judgment of the district court and the decision of the court of appeals.

Waterman, J., joins this dissent.